BARNES, J„
for the Court:
¶ 1. Barbara Sharlow filed a negligence suit after she slipped and fell on the sidewalk outside Raybourn’s Hair Salon. Sharlow alleged that Raybourn’s breached its duty to her as an invitee by failing to correct or warn her of a dangerous condition on the sidewalk. The circuit court found that Raybourn’s owed Sharlow no such duty, as she was a licensee at the time of her fall. Raybourn’s was granted summary judgment. We agree that summary judgment was appropriate and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Sharlow worked as a full-time receptionist at Raybourn’s from 1995 to 2004. In 2008, she returned to work at Raybourn’s as a receptionist on an as-needed basis. Beginning in 2004, after she retired, Sharlow received free haircuts from Mary Whittington, a stylist at Rayb-ourn’s, once every four to six weeks. Sharlow would make her appointments directly with Whittington, even though Raybourn’s had a receptionist. Sharlow did not pay Whittington for the haircuts; however, she always left a tip. On October 2, 2009, Sharlow entered Raybourn’s at 7:00 a.m. to have her hair cut by Whit-tington. Sharlow was not scheduled to work that day, and the appointment was not during normal business hours, as Raybourn’s opened at 8:00 a.m.
¶ 3. It was raining heavily on the day of Sharlow’s appointment. While she was inside the salon, a “big downpour” occurred. After her haircut, Sharlow waited inside for the storm to subside. Between 7:30 and 7:45 a.m., the rain “let up a little bit,” and Sharlow decided to leave. When she exited the building and proceeded to the parking lot, she slipped and fell on a concrete ramp adjacent to Raybourn’s. Water had accumulated on the ramp due to the rainfall, and additional water was redirected onto the ramp from the down spout of the building’s gutter system. Sharlow broke her left ankle and injured her left leg and foot during the fall.
¶ 4. According to Whittington, Sharlow admitted immediately after the fall that she was at fault, and that she “knew better than to run in the rain.” Robert Rayb-ourn, the salon’s owner, spoke to Sharlow later, as he was not at the salon when the fall occurred. Raybourn testified that Sharlow told him that the fall was “not his fault,” but that her “feet just went out from under [her].” Sharlow admitted that she did not use the handrail when walking down the ramp. She did not recall the conversations with either Whittington or Raybourn.
¶ 5. On March 18, 2011, Sharlow and her husband, Thomas Sharlow, filed a negligence action against Raybourn, individually and doing business as Raybourn’s. The complaint alleged that Sharlow was injured and suffered damages as a result of: (1) Raybourn’s failure to keep its premises reasonably safe; (2) its failure to warn her of the dangerous condition on the sidewalk; and (3) its failure to design and/or install the gutters and walkway *241 properly. Thomas alleged mental and emotional distress and loss of consortium.
¶ 6. On November 11, 2011, Raybourn’s filed for summary judgment. Raybourn’s argued that summary judgment was warranted because Sharlow’s negligence claim was based solely on Sharlow’s status as an invitee, when the undisputed facts showed she was a licensee. As a licensee, Sharlow was owed a lesser duty of care than asserted in her complaint. The trial court agreed that the undisputed facts showed that Sharlow was a licensee. Because the record did not support a cause of action based on her status as a licensee, summary judgment was granted in favor of Rayb-ourn’s. Sharlow appeals.
STANDARD OF REVIEW
¶ 7. This Court reviews “the grant or denial of a motion for summary judgment de novo.” Karpinsky v. Am. Nat’l Ins. Co., 109 So.3d 84, 88 (¶ 9) (Miss.2013). Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). The evidence must be viewed “in the light most favorable to the party against whom the motion has been made.” Karpinsky, 109 So.3d at 88 (¶ 9) (quoting Pratt v. Gulfport-Biloxi Reg’l Airport Auth., 97 So.3d 68, 71 (¶ 5) (Miss.2012)).
ANALYSIS
¶ 8. Sharlow argues summary judgment was inappropriate because a factual dispute existed as to whether she was an invitee or licensee of Raybourn’s at the time of her fall.
¶ 9. A person’s status as an invitee, licensee, or trespasser determines a property owner’s duty in a premises-liability action. Double Quick, Inc. v. Moore, 73 So.3d 1162, 1166 (¶ 12) (Miss.2011). Once that duty is established, it is the plaintiffs burden to prove that the duty was breached, damages resulted, and a causal connection existed between the injuries and breach, such that the breach was the proximate cause of the injuries. Id. at (¶ 11). “When circumstances surrounding the victim’s purpose on the property are in dispute, status will be a fact question for a jury to decide.” Cade v. Beard, 130 So.3d 77, 81 (¶ 14) (Miss.2014) (citing Little ex rel. Little v. Bell, 719 So.2d 757, 760 (¶ 17) (Miss.1998)). “[W]here there are no factual disputes, status is a question of law for the trial court’s determination.” Id.
¶ 10. An invitee is one who enters “the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage.” Corley v. Evans, 835 So.2d 30, 37 (¶ 21) (Miss.2003). A property owner “owes a duty to the invitee to keep the premises reasonably safe and, when not reasonably safe, to warn only of hidden dangers not in plain and open view.” Double Quick, 73 So.3d at 1166 (¶ 13). However, “a property owner is not the insurer of an invitee’s safety.” Id. A licensee is one who enters “the property of another for his own convenience, pleasure, or benefit pursuant to the license or implied permission of the owner.” Cade, 130 So.3d at 81 (¶ 14) (quoting Corley, 835 So.2d at 37 (¶ 21)). A premises owner owes the same duty of care to a licensee as is owed to a trespasser — that is, “only the duty to refrain from willfully or wantonly injuring the licensee, unless the landowner engages in active conduct and knows of his or her presence.” Handy v. Nejam, 111 So.3d 610, 614 (¶ 14) (Miss.2013).
¶ 11. On the day she fell, Sharlow was present at Raybourn’s to receive a *242 free haircut. Sharlow asserts that she was an invitee because: (1) Raybourn expressly or impliedly invited employees to the premises to receive free hair cuts; and (2) she and Raybourn received a mutual advantage from her presence — she received a free haircut, and Raybourn benefítted from free advertisement and happy employees. Raybourn admitted that he gave express or implied permission to stylists to give free haircuts to employees as a “perk” of employment.[1] Further, Raybourn testified that Whittington had permission to schedule appointments outside of normal business hours and discretion not to charge Sharlow. Therefore, we find that Sharlow was on the premises at Rayb-ourn’s implied permission.
¶ 12. Sharlow must next prove that she and Raybourn received a mutual advantage from her presence at the salon on the day of her fall. According to Whitting-ton’s affidavit, she “never charged [Shar-low] for haircuts because [Sharlow] is [her] friend.” Sharlow does not dispute this. Thus, the advantage to Sharlow is clear: she received a free haircut. The advantage to Raybourn, however, is not clear. Raybourn received no direct financial benefit from the free haircut. Sharlow nonetheless argues that a factual dispute exists as to whether Raybourn received a mutual advantage for three reasons. First, she asserts that Raybourn potentially benefit-ted from the free advertisement of a good haircut. That is, others would see Shar-low’s haircut, and she would refer them to Raybourn’s. Second, she asserts that the “free haircut” was “not really free” because Whittington required a tip. Third, she asserts that Raybourn’s had the potential to make a profit if Whittington decided to charge her, or if products such as chemicals and dyes were used.
¶ 13. The record does not support Shar-low’s argument that Raybourn’s received a financial benefit from free advertisement from her haircut. Shadow's argument is based on speculation, not facts. No testimony was given that Sharlow had referred anyone to the salon based on her free haircuts. In fact, Shadow’s husband testified that he was not aware of anyone whom Sharlow had referred to the salon. Further, Raybourn did not testify that it was his intent to receive free advertising in exchange for free haircuts. Instead, he testified that he allowed stylists to give free haircuts, at their discretion, to make employees happy. Raybourn did not indicate that he had ever received a financial benefit from free haircuts of employees or anyone else. Rather, Raybourn asserts he sustained a loss for the free haircuts because he still incurred operating expenses, such as electricity, laundering of towels, water, insurance, and other expenses necessary to operate the business. The stylists at Raybourn’s do not reimburse Rayb-ourn for these expenses, and they do not pay rent for their chairs. Rather, Rayb-ourn’s receives a percentage of the revenue the stylists generate. When no revenue is generated, the salon receives no revenue to cover its fixed expenses. As there has been no testimony that Rayb-ourn’s profited from the free haircuts, the potential advantage argued by Sharlow is *243 mere speculation. Sharlow has cited no law for the proposition that a speculative financial benefit can create a mutual advantage. Further, the advantage of happy employees to Raybourn’s is a psychological benefit, which has been found insufficient to prove a mutual advantage. See Daulton v. Miller, 815 So.2d 1287, 1239 (¶ 10) (Miss.Ct.App.2001) (homeowner’s psychological satisfaction of having guest enjoy Christmas display did not transform guest into “invitee”). While it may be argued that happy employees produce more revenue, there has been no assertion that this can be proven. Thus, we find that Shar-low has failed to create a fact question as to whether Raybourn’s received a mutual advantage from her free haircut.
¶ 14. Next, Sharlow argues that her haircut was not truly free, because Whit-tington only gave free haircuts to those who tipped. Thus, she argues Whittington was compensated, but in the form of a tip, rather than a commission. Any tip paid to Whittington was not shared with Rayb-ourn’s. Rather, Raybourn’s received a percentage of the fees charged by its stylists. If a customer did not pay the fee, Raybourn’s received nothing. Thus, while Sharlow always tipped Whittington, Rayb-ourn’s received no benefit from this. Whittington’s requirement that nonpaying customers tip only created a mutual advantage between Sharlow and Whittington. No mutual advantage existed as to Rayb-ourn’s. This assertion is without merit.
¶ 15. Finally, Sharlow asserts that Raybourn’s had the potential for profit because she would have been required to pay Raybourn’s for any dyes or chemicals used during her appointment. Also, Shar-low asserts Whittington had the discretion to begin charging her at any time for her haircuts, thus again creating a potential for profit. We do not need to discuss the payment for dyes and chemicals, as it is not alleged that those products were used at Sharlow’s appointment. Likewise, we do not need to discuss the potential for payment based on Whittington’s discretion to charge Sharlow, as Whittington did not charge Sharlow and had never charged her in the past. Further, the facts show that Sharlow did not anticipate having to pay for her haircut on the day of her fall, as Sharlow’s own testimony showed that she did not even take her wallet or purse with her into Raybourn’s.
¶ 16. In making her arguments, Shar-low asserts this case is comparable to Howell v. Holiday, — So.3d -, - (Miss.Ct.App.2013), in which this Court found the plaintiffs status as an invitee or licensee was a jury question. In Howell, the plaintiff alleged she was injured when she tripped over an extension cord in front of the defendant’s hair salon. Id. at - (¶ 4). The plaintiff was not a customer of the hair salon. Rather, she parked in the parking lot after hours to attend an event unrelated to the hair salon. Id. We found that a factual dispute existed “regarding possession and control of the common areas of the premises and responsibility for the alleged dangerous condition of the property.” Id. at - (¶28). Thus, a jury question was presented as to the plaintiffs status. Sharlow’s case is distinguishable, however, as no such facts are in dispute here.
¶ 17. The undisputed facts in this case show that Raybourn’s received no mutual benefit from Sharlow’s presence at the salon. Rather, Sharlow was at Rayb-ourn’s “for [her] own convenience, pleasure, or benefit pursuant to the ... implied permission [of Raybourn].” Double Quick, 73 So.3d at 1166 (¶ 12). While the facts show that Sharlow received the advantage of free haircuts, Raybourn’s received no tangible advantage in return. When determining a person’s status as an *244 invitee or licensee, we must “focus on the owner and whether that person is receiving an advantage, or just permits the presence of the entrant....” Daulton, 815 So.2d at 1239 (¶ 9). Here, Raybourn’s permitted Sharlow’s presence on the property, but received no benefit from it. For this reason, Sharlow was a licensee, not an invitee, of Raybourn’s.
¶ 18. A property owner owes a licensee the duty “to refrain from willfully or wantonly injuring the licensee, unless the landowner engages in active conduct and knows of his or her presence.” Handy, 111 So.3d at 614 (¶ 14). There is no evidence of willful or wanton conduct in the record, nor was willful or wanton conduct pled in the complaint. Raybourn testified that he was unaware of any problem with the ramp. He had not received any complaints about rainwater accumulating on the ramp; and, to his knowledge, no one had ever slipped or fallen on the ramp. Further, Raybourn was unaware of Shar-low’s presence on the property, and he engaged in no active conduct to injure her.
¶ 19. “[Sjummary judgment is appropriate when the non[]moving party has failed to make a showing sufficient to establish the existence of an element essential to the party’s case, and on which that party will bear the burden of proof at trial.” Karpinsky, 109 So.3d at 88 (¶ 11) (citation and internal quotation marks omitted). Because Sharlow does not assert any intentional act to willfully or wantonly injure her, an essential element of her negligence claim, summary judgment was correctly granted in favor of Rayb-ourn’s. Likewise, because summary judgment was correctly granted as to Shar-low’s claims, it was correctly granted as to Thomas’s claims. Thomas’s claims for mental and emotional distress and loss of consortium are solely derivative of Shar-low’s claims. See Daulton, 815 So.2d at 1241 (¶ 17). Having held that Sharlow’s claims fail, we must conclude that Thomas’s claims fail as well. See id.
¶ 20. The trial court’s grant of summary judgment in favor of Raybourn’s is supported by the undisputed facts. Thus, we affirm its decision.
¶ 21. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. While Raybourn admitted that he gave stylists permission to give free haircuts to employees, a dispute existed as to whether Shar-low was an employee. Raybourn testified that he did not consider Sharlow an employee since "[s]he was a fill-in on a contract basis per hour on the hours she worked.” He also stated that he would have expected her to pay for services. He also testified he was unaware of her presence at the salon on the day of her fall. Sharlow considered herself an employee. Taking the evidence in the light most favorable to the nonmoving party, Shar-low, we find that she was an employee for purposes of this appeal.